## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **CHANDER KANT, ET AL.**, | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | |
| | * | Civil Case No. RWT 06-1622 |
| **NRT MID-ATLANTIC, INC. D/B/A** | * | |
| **COLDWELL BANKER** | * | |
| **RESIDENTIAL  BROKERAGE, ET AL.** | * | |
| Defendants. | * | |

\* \* \* \* \* \* \*

| | | |
|---|---|---|
| **CHANDER KANT, ET AL.**, | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | |
| | * | Civil Case No. RWT 07-1447 |
| **CHIRAG PATEL ET AL.,** | * | |
| Defendants. | * | |

\* \* \* \* \* \* \*

## <u>MEMORANDUM OPINION</u>

Plaintiffs Chander and Ashima Kant filed these actions, *pro se*, against Karen Maraia and NRT Mid-Atlantic, Inc. (d/b/a Coldwell Banker Residential Brokerage) ("NRT") (collectively "The Agent Defendants"), and Chirag V. Patel and Edward Smith, Jr. (collectively "the Attorney Defendants"), alleging various claims under federal and state law.[1]   Pursuant to Fed. R. Civ. P. 12(b)(6), both of the

---

[1]Although *pro se*, the Kants are by no means strangers to the judicial system. By the Court's count, Chander Kant has filed 29 cases in the Maryland state court system, and his wife Ashima has filed 18 cases. Indeed, these are not the first lawsuits filed by Plaintiffs involving the sale of their Rockville, Maryland, townhouse. Each of three prior actions pursued in this Court by the Kants with respect to their Rockville, Maryland, townhouse, have been dismissed in favor of the opposing parties. <u>See</u> <u>Kant v. Bregman, Berbert, Schwartz & Gilday, LLC</u>, 2005 WL 5337579 (D. Md. 2005), <u>Kant, et al v. Bregman, Berbert</u>, Civil No. 02-02371WMN (closed June 18, 2003), <u>Kant, et al v. Nagle and Zaller</u>, Civil No. 02-00283 WMN (closed October 7, 2002). A sixth action in this Court, <u>Gant v. Kant</u>, Civil No. 03-cv-02803-RWT, is still pending.

The action against the Attorney Defendants was originally filed by the Plaintiffs in the Circuit Court for Baltimore City on February 9, 2007, but was removed to this Court by the Plaintiffs after a Counterclaim was filed against them by Edward Smith, Jr.

Agent Defendants and one of the Attorney Defendants have moved to dismiss the complaints in their entirety for a failure to state claims upon which relief can be granted. One of the Attorney Defendants has also filed a counterclaim against the Kants for abuse of process. For the reasons stated herein, Defendants' motions will be granted by a separate order.

**I.**

On May 9, 2003, Plaintiffs, who are Asian Indian, listed their Rockville townhouse for sale through their listing agent, Raimondi Realtors. On May 29, 2003, Ms. Gant made an offer to the Plaintiffs through their listing agent. After a counter-offer from the Plaintiffs and subsequent acceptance from Ms. Gant, the parties entered into a real estate sales contract on June 1, 2003. Karen Maraia, an independent contractor affiliated with NRT, acted as the agent for Ms. Gant, and held the deposit made by Ms. Gant.  Settlement was to be completed by June 25, 2003.

The deal fell apart, however, as Ms. Gant did not settle by June 25, 2003. According to the complaint, the Kants claim that Ms. Maraia advised Ms. Gant that time was not of the essence in the contract, that the contract was still valid, and that Ms. Gant could settle anytime within a reasonable period after June 25, 2003.  When Ms. Gant did not settle by June 30, 2003, the Kants demanded the buyer's deposit from Ms. Maraia, and placed the property back on the market.  The deposit was not paid to the Kants, and Ms. Maraia allegedly called the Kants' conduct of placing the home back on the market "uncivilized and appalling." The Kants also allege that Ms. Maraia refused to show additional substitute properties to Ms. Gant.

On July 15, 2003, the Kants received a letter from Ms. Gant's lawyer, Gregory Flynn, Esquire, who informed the Kants that Ms. Gant intended to file an action for breach of contract against the Kants for refusing to sell the Rockville townhouse to her.  The Kants allege that they contacted Chirag V. Patel, Esquire, to seek his legal advice on this matter.  Mr. Patel allegedly informed them that he would respond to Mr. Flynn's letter for a fee of $500.  The Kants claim that they paid Mr. Patel this fee on July 26, 2003. However, on July 24, 2003, two days prior to the Kants' payment of this fee, Ms. Gant filed suit in the Circuit Court for Montgomery County against the Kants for breach of contract and specific performance.  The Kants thereafter removed the Gant complaint to this Court.

While the Gant lawsuit was ongoing, the Kants traveled out of the country and allege that Mr. Patel assured the Kants that he would speak with Mr. Flynn about settlement. The Kants claim that Mr. Patel did not speak with Mr. Flynn about settlement until October 31, 2003, although he had told them that he would raise the issue with opposing counsel in September, 2003.  After discovery began, the Kants sent a written settlement offer, per Mr. Patel's instructions, to Mr. Flynn on December 9, 2003. This offer was rejected by Ms. Gant on December 10, 2003.

The Kants allege that they entered into a representation agreement with the Attorney Defendants on December 12, 2003.  In their complaint, they claim that Patel and Smith did not file a response to a Motion to Compel Discovery that was filed by Ms. Gant on December 18, 2003, and that as a result, the Court granted the motion on January 9, 2004 and the Kants were forced to turn over personal information, including federal and state tax returns for the years 2000 through 2003.  The records of this Court

reflect that the Defendants, acting *pro se*, filed a motion in this Court on January 14, 2004, requesting reconsideration of the order compelling production of these records. Smith and Patel moved the Court to withdraw as the Kants' attorneys, and this motion was granted on February 13, 2004.

The Kants' action against the Agent Defendants, RWT 06-cv-1622, alleges discrimination pursuant to 42 U.S.C. § 1981.  They also claim that the agent Defendants violated the Fair Housing Act of 1968, breached an implied contract, breached a duty of fidelity and loyalty, engaged in gross negligence, malicious interference with a contract, and willful misconduct, and negligently inflicted emotional distress on the Plaintiffs. The Agent Defendants have moved to dismiss each count.

The Kants' suit against the Attorney Defendants, RWT 07-cv-1447, alleges that they breached their contract with the Kants, committed a breach of fiduciary duty to the Kants, were professionally negligent, and engaged in negligent misrepresentation and fraudulent misrepresentation. Attorney Defendant Smith has moved the Court to dismiss the complaint.[2]   Attorney Defendant Smith has also filed a counterclaim against the Kants alleging abuse of process.[3]

## II

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss may be granted when "a plaintiff can prove no set of facts which would support his claim and would entitle him to relief." Partington v. Am. Int'l Specialty Lines Ins. Co., 443 F.3d

---

[2]It appears from the record that the Kants have not served Defendant Chirag V. Patel, and thus only Defendant Smith has filed the Motion to Dismiss.  Because the Plaintiffs have not properly served Defendant Patel, the Court will, by separate order, dismiss the claims against him pursuant to Rule 4(m) of the Federal Rules of Civil Procedure and because they are, and explained below, also barred by limitations.

[3]Now that the pending motions to dismiss have been decided, a Scheduling Order will issue with respect to the counterclaim brought against the Plaintiffs by the Attorney Defendant Smith.

334, 338 (4th Cir. 2006).  "In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Laboratories, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). However, "[m]ere vagueness or lack of detail does not constitute sufficient grounds for a motion to dismiss." Buchanan v. Consolidated Stores Corp., 125 F. Supp.2d 730, 734-35 (D.Md. 2001).

The Court should be particularly solicitous to *pro se* civil rights plaintiffs. Gordon v. Leake, 574 F.2d 1147, 1151 (4th Cir. 1978). Nonetheless, the Court need not accept unsupported legal conclusions, District 28, United Mine Workers of America, Inc. v. Wellmore Coal Corp., 609 F.2d 1083, 1085 (4th Cir. 1979), or legal conclusions couched as factual allegations.  Papasan v. Allain, 478 U.S. 265, 286 (1986).

### III

Plaintiffs allege five separate counts against the Agent Defendants. The Court will consider each in turn.

### A. The Claims Against the Agent Defendants, NRT and Karen Maraia

Plaintiffs make the following claims against the Agent Defendants: (1) the Agent Defendants discriminated against the Plaintiffs on the basis of their Asian-Indian race in violation of 42 U.S.C. § 1981, (2) the Agent Defendants discriminated against the Plaintiffs on the basis of their Asian-Indian race and national origin in violation of 42 U.S.C. § 3604(b), the Fair Housing Act, (3) the Agent Defendants breached the duties of an implied contract with the Plaintiffs, (4) the Agent Defendants breached a fiduciary duty in violation of Md. Code Ann., Bus. Occ. & Prof. § 17-532, and (5) the Agent

Defendants maliciously interfered with the contract, breached the contract by refusing to release the deposit, and negligently inflicted emotional distress against the Plaintiffs.

1.    **The Kants' 42 U.S.C. § 1981 Claim Fails Because There Is No Allegation That The Defendants Discriminated on the Basis of Race, Or That The Defendants Interfered with Plaintiffs' Ability to Make or Enforce a Contract**.

Section 1981 states:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).  However, the Kants' complaint does not make any allegation of intentional discrimination by the Agent Defendants.  As such, they "must proffer sufficient circumstantial evidence to satisfy the familiar McDonnell Douglas analytical framework."  Williams v. Staples, Inc., 372 F.3d 662, 667 (4th Cir. 2004).  Accordingly, to assert a *prima facie* case of discrimination pursuant to § 1981, the Kants must aver that: (1) they are members of a protected class, (2) they sought to enter into a contractual relationship with the defendant, (3) they met the defendants' ordinary requirements to pay for and to receive goods or services ordinarily provided by the defendants to other similarly situated customers; and (4) they were denied the opportunity to contract for goods or services that was otherwise afforded to white customers. Id.

At the outset, there are no factual allegations to support the Kants' claim of racial discrimination.  There is nothing in the complaint that alleges that the Agent Defendants discriminated against the Kants in violation of § 1981 when they allegedly failed to provide the Kants with the deposit made by Ms. Gant, failed to achieve the June 25, 2003

settlement date, claimed the contract was still in effect, or described the Plaintiffs' behavior as "uncivilized and appalling."   Although the Kants cite to <u>Hill v. Shell Oil</u>, 78 F. Supp.2d 764 (N.D. Ill. 1999) and <u>McCaleb v. Pizza Hut of America</u>, 28 F. Supp. 2d 1043 (N.D. Ill.1998) for the proposition that "a claim under 42 U.S.C. § 1981 was allowed to proceed even though it neither alleged biased refusal to contract nor discriminatory interference with enforcement of a contract," the Kants interpretation of these cases is simply incorrect.

In <u>Hill</u>, the Plaintiffs cited to 17 incidents of racially-motivated interference with contractual relations (there, the ability to pay for gasoline after it had been pumped) at 12 gas stations. <u>Hill</u>, 78 F. Supp. 2d at 775.   The <u>Hill</u> Court allowed the case to proceed based on these incidents of "biased refusal."

The Kants have also misinterpreted the findings in <u>McCaleb</u>.   In that case, the Court allowed the Plaintiffs' § 1981 claims to proceed against the Defendant Pizza Hut because there was evidence in the record that the Defendants had uttered racial slurs against the Plaintiffs and had refused to serve them as they had served white customers earlier in the evening, and thus the Plaintiffs in that case also suffered "biased refusal." 28 F. Supp. 2d at 1046.

The facts alleged by the Kants in these cases have no similarity whatsoever to the these cases, and thus the Kants' reliance on <u>Hill</u> and <u>McCaleb</u> is misplaced. Furthermore, the Kants have misunderstood the law as articulated by the <u>Hill</u> and <u>McCaleb</u> courts.  In short, the Kants' § 1981 claim must be dismissed because it does not contain anything more than "mere conclusory allegations of discrimination," which do not meet the threshold for a discrimination claim under the federal statute. <u>Simpson v. Welch</u>,

900 F.2d 33, 35 (4th Cir. 1990) (holding mere allegations, without any factual allegations to back up the claims, of working under conditions where "prejudice and bias exist" and of being "treated poorly on the job and harassed" failed to state a claim upon which relief can be granted).[4]

Aside from the complete lack of any allegations of an intent to discriminate, Plaintiffs also do not allege that they were "denied the opportunity to contract with Ms. Gant." In fact, the record reflects that just the opposite occurred: Ms. Gant wished to contract with the Kants and they instead opted to terminate the contract and put the townhouse back on the market. There is no allegation that the Agent Defendants prevented the Plaintiffs from attempting to enforce the contract as the Kants' various actions involving the townhouse demonstrate. See note 1, supra. Because there is no allegation that the Agent Defendants discriminated against the Kants because of their race, and because there is no averment that they interfered with the Kants' ability to make and enforce the housing contract, the Court will dismiss this claim.

**2.      Because the Plaintiffs Were The Sellers, and Not The Buyers of the Rockville, Maryland Townhouse, Their Fair Housing Act Claim Must Be Dismissed**.

The Kants next claim that the Agent Defendants violated the Fair Housing Act of 1968, 42 U.S.C. § 3604(b), "because the said defendants discriminated against the Kants in the provision of real estate services on account of the Kants' race and national origin." The Fair Housing Act makes it unlawful to refuse to *sell or rent* or discriminate in the terms, conditions, or privileges *of sale or rental* because of race or national origin. See 42

---

[4] The Kants have attempted to differentiate their case from Simpson in their Opposition, however, their argument is misguided. While the Kants may have included specific details in their complaint about the time and place of the challenged conduct, they have failed to include any specific allegations that the challenged conduct was the result of discrimination.

U.S.C. § 3604(a)(b) (emphasis added). Because the Plaintiffs were the sellers, not the buyers or renters, in the real estate transaction, the Fair Housing Act does not apply. Accordingly, this claim will also be dismissed with prejudice.

**3.     The Implied Contract Claim Fails Because of the Existence of an Express Contract.**

The Plaintiffs next claim that the Agent Defendants breached an implied contract that they had with the Kants.  In the same section of the complaint, however, they also state that "this relationship was controlled by the real estate brokers' agreement to cooperate and [sic] applicable rules applicable rules and statutes." It is a basic tenet of Maryland law that there can be no implied contract where there is an express agreement in place that addresses the contractual relationship between the parties. West v. Flannagan, 1853 WL 2521, *1 (1853).

Further, an implied contract can only exist when the agreement can be legitimately inferred from the circumstances and the "ordinary course of dealing and the common understanding of men." County Comm'rs of Caroline Co. v. J. Roland Dashiell & Sons, Inc., 358 Md. 83, 94 (2000). No actions taken by Agent Defendants suggest they entered into any legally binding agreement with the Plaintiffs. The only relevant contract executed by the Agent Defendants clearly stated that NRT "represents the Purchaser." Def. Mem. Attach. Ex. 1 at ¶ 1.[5] Plaintiffs have made no allegation that the Agent Defendants entered into a contract with them or even acted in a way that would suggest they entered into an agency agreement with them. Rather, the allegations of the

---

[5] The Court can consider documents referred to in the complaint and relied upon to justify a cause of action even if the documents are not originally attached to the complaint without converting the motion to a summary judgment motion. See New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am., 18 F.3d 1161, 1164 (4th Cir. 1994). See also Fed. R. Civ. P. 10(c).

complaint demonstrate that the Agent Defendants were acting only as agents of the buyer, Ms. Gant. Accordingly, this claim will also be dismissed.

**4.      Because the Agent Defendants Were Agents of The Buyer, Plaintiffs' Claim That The Defendants Breached A Duty of Fidelity or Loyalty Must Fail.**

The Plaintiffs have also claimed the Agent Defendants breached a fiduciary duty as agents under Md. Code Ann., Bus. Occ. & Prof. § 17-532.  It is clear that the Agent Defendants were the exclusive agents of the prospective buyer, Monica Gant, and were not the Plaintiffs' agents. Thus the Agent Defendants did not owe the Plaintiffs a duty of fidelity or loyalty and did not breach any fiduciary duty. Indeed, § 17-532 only applies to the duties owed by real estate brokers to prospective buyers or lessees. See § 17-532(a)-(c).  Accordingly, this count also will be dismissed.

**5.      Because the Agent Defendants Were Agents To A Party To The Contract, Because They Did Not Engage In Gross Negligence Or Willful Misconduct, And Because Maryland Does Not Recognize a Separate Cause of Action for Negligent Infliction of Emotional Distress, Plaintiffs' Fifth Cause of Action Must Be Dismissed.**

Plaintiffs conclude their complaint against the Agent Defendants with a virtually unintelligible smattering of claims including "malicious interference with contract," "gross negligence," "willful misconduct,"and   "negligent infliction of emotional distress," all of which will be dismissed.

Plaintiffs "malicious interference with contract" claim must fail because the Agent Defendants were acting as agents for a party to the contract. An agent acting on behalf of a principal cannot be liable for interfering as a third party  Continental Cas. Co. v. Mirabile, 52 Md. App. 387, 402 (Md. App.1982).  Because the Agent Defendants cannot interfere with a contract to which their principal is a party, and because it is clear that the Agent Defendants were agents for Ms. Gant, they cannot as a matter of law be

found liable for tortious interference with the contract. Id.; see also, Bleich v. Florence Crittenton Services of Baltimore, Inc., 98 Md. App. 123, 146-147, (Md. App. 1993).

Turning to Plaintiffs claims of "gross negligence" and "willful misconduct," these allegations do not appear to be separate causes of action, but rather refer to the express or an alleged implied sales contract which was allegedly breached.  Presumably, the Plaintiffs are claiming NRT, as the buyer's agent, breached the contract by refusing to release Ms. Gant's deposit to the Kants.  However, the contract specifically states that NRT could release the escrow funds only if both parties agreed to have the deposit disbursed.[6] See Def. Mem. Arrach. 1 at ¶ 5. By complying with the terms of the contract, NRT could not be said to have engaged in willful misconduct or gross negligence because Ms. Gant never agreed to release the deposit.[7]

Finally, Plaintiffs' claim of negligent infliction of emotional distress is not recognized in Maryland as a separate and distinct tort. Hamilton v. Ford Motor Credit Co., 66 Md. App. 46, 61 (Md. App.1986)). Thus this claim must also fail.

Because Plaintiffs have failed to state any claim upon which relief can be granted, the Court will grant the agent Defendants' Motion to Dismiss by separate order.

## IV.

The Kants' action against Attorney Defendant Smith alleges that he is an attorney they claim to have been represented by in conjunction with the botched sale of their Rockville, Maryland townhouse.  In their complaint, they allege that the Attorney Defendants "breached their legal services contract with the Kants, breached their

---

[6] A court order also could require disbursement. See Def. Mem. Attach. 1 at ¶ 5.

[7] Indeed, if NRT had released the deposit to the Kants, it could have exposed itself to a breach of contract claim by Ms. Gant.

fiduciary duty to the Kants, were professionally negligent, and engaged in negligent misrepresentation, and fraudulent misrepresentation." RWT 07-1447 Def. Complaint at ¶ 22.  Attorney Defendant Smith has moved to dismiss the Kants' claims against him.

**A.      The Kants Claims Against Defendant Smith Must Be Dismissed Because There Are No Allegations To Support The Existence of an Attorney-Client Relationship Between the Kants and Defendant Smith.**

Maryland law governs the Plaintiff's claims.  In Maryland, to have a cause of action against an attorney for negligence or breach of fiduciary duty, Plaintiffs must first allege that they had an attorney-client relationship with the defendant. Ferguson v. Cramer,  116 Md. App. 99, 112 (Md. App.1997); see also, Ahan v. Grammas 2004 WL 2724111, *6 -7  (Md. Cir. Ct. Nov. 19, 2004).  The Kants have alleged that they entered into a "full representation agreement with Mr. Patel and Mr. Edward Smith, Jr." on December 12, 2003.  They have not alleged that they paid Mr. Smith a fee (they only claimed to have paid a $500 fee to Defendant Patel, on whom the Plaintiffs have not effected service), nor do they claim to have entered into a written contract of employment.  The Attorney Defendant Smith is only mentioned in ¶¶ 17 and 21 of the complaint, while the remaining allegations of the complaint refer only to actions taken, or not taken, by the Attorney Defendant Patel.  It is difficult, at best, to decipher what actions, or inactions, of Smith serve as the basis of the complaint, and there is no allegation that Patel was acting as Smith's agent.  Thus, the allegations of the complaint are borderline, at best, in alleging a cause of action for legal malpractice.  The Court need not, however, resolve that issue because the claims against Attorney Defendant Smith are barred by the statute of limitations.

**B.     The Kants Claims Must Be Dismissed Because They Are Time-Barred Under Maryland Law.**

Even assuming an attorney-client relationship existed, the Kants filed their case against the Attorney Defendants on February 9, 2007 in the Circuit Court for Baltimore County, Maryland. However, according to their own complaint, they were aware of the actions that gave rise to this lawsuit for negligence, misrepresentation and breach of fiduciary duty in January of 2004.  Indeed, they specifically reference the Attorney Defendants' alleged misconduct from December 2003 and January 2004, when the Attorney Defendants allegedly did not file a response to a Motion to Compel that was granted on January 9, 2004.

In Maryland, the "discovery rule" as set out in <u>Poffenberger v. Risser</u>, 290 Md. 631 (1981), governs civil claims. This rule states that "the cause of action accrues when the wrong is discovered or when with due diligence it should have been discovered." <u>Id.</u> at 634-35.  Although originally applicable only to claims of professional misconduct, <u>id.</u>, Maryland has expanded the rule to apply to all civil actions. <u>Id.</u> at 636.  Maryland has further codified a three-year statue of limitations for civil claims. Md. Cts. & Jud. Pro. Code Ann. § 5-101.   The Kants have stated that they were aware of the Attorney Defendants' alleged misconduct and lack of attention to their case in January, 2004 when the Attorney Defendants allegedly did not respond to the Motion to Compel.  Thus the three-year statute of limitations expired in January, 2007. Because the Kants did not file this suit until February, 2007, their claims against the Attorney Defendants are time-barred pursuant to § 5-101. Accordingly, even if the Kants could establish an

attorney-client relationship with Attorney Defendant Smith, their claims against him must be dismissed.[8]

## V.

For the reasons stated herein, both Motions to Dismiss will, by separate orders, be granted, and Plaintiffs' complaints against both the Agent Defendants and the Attorney Defendants will be dismissed with prejudice.


September 18, 2007                          /s/
DATE                                ROGER W. TITUS
                                    UNITED STATES DISTRICT JUDGE

---

[8]The claims against the Attorney Defendant Patel are also time-barred and, accordingly, the complaint as to him will be dismissed not only for failure to effect service within the time required, but also on the basis of the statute of limitations.